IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSH BRKICH,

    Petitioner,

v.                                        No. 2009-CV-00226 JAP/WDS

FEDERATED MUTUAL INSURANCE
and ALCON'S ENTERPRISES, INC.
d/b/a R&S Honda Polaris

    Respondents.

## RSA ENTERPRISES, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Having failed in his Petition for Declaratory Judgment ("Petition") to articulate a live controversy against, or seek any remedy from, his former employer, RSA Enterprises LLC ("RSA"), Petitioner relies on speculation about hypothetical future events as a basis to compel RSA to remain a party to this action nonetheless.  Conjecture about events that may never come to pass, however, cannot serve as the basis for a declaratory judgment action.  That is particularly true here, where Petitioner's speculation has no foundation in reality.  Because RSA has no stake in the only actual dispute before the Court, RSA should be dismissed as a party to this action.

### BACKGROUND

Petitioner is a former employee of RSA, a business which sells and services motorcycles. *See* Petition, attached to Notice of Removal as Exhibit 1, ¶ 2.  Petitioner alleges that, while riding a motorcycle that had been brought to RSA for service, he was injured in a collision with an underinsured driver.  *See id.* ¶¶ 5-6.  Petitioner then made a claim for uninsured/underinsured motorist coverage ("UM/UIM coverage") against the policy issued by Federated Service

Insurance ("Federated") to RSA.  *See id.* ¶ 10.  Because RSA had specifically rejected UM/UIM coverage for non-managerial employees like Petitioner, Federated denied the claim.  *See id.* ¶ 11.

In this action, Petitioner asks the Court to "declare that the rejection form attached as Exhibit A is not valid and that there is $500,000 in available un/underinsured motorist coverage and for such other relief as this Court may deem appropriate."  *See* Petition at 2.  Petitioner did not seek any other relief and did not assert any claims for damages.  *See id.*  Petitioner named both Federated and RSA as Respondents to his Petition.

RSA moved to dismiss on the grounds that the Petition sought no relief from RSA, as only Federated, not RSA, would be obligated to make payments to him if he were to prevail in this action.  *See* RSA Enterprises LLC's Motion to Dismiss (Docket No. 13).  In his Response, Petitioner does not dispute this essential premise -- that a declaration regarding the coverage under Federated's policy would not directly affect RSA.  Petitioner nonetheless argues that RSA is a proper party to this action.  Petitioner first asserts he has plans to bring a claim for damages against RSA -- for failing to procure insurance coverage for him -- if he is unsuccessful in convincing the Court that his claim is covered under Federated's policy.[1]  *See* Petitioner's Response to Motion to Dismiss ("Response") at 1-2.  Petitioner speculates that, to prevent this potential future lawsuit, RSA will disavow its own decision to reject UM/UIM coverage and encourage the Court to find that Federated's policy covers Petitioner's claim.  *See id.*

Petitioner also raises the prospect that he could be subject to inconsistent judgments if RSA is not joined as a party to the current proceedings.  *See id.* at 4.  He bases this argument on his belief that RSA "would not be bound by notions of estoppel" unless it was required to remain

---

[1] Petitioner admits that he has not yet brought such a claim, and could not bring such a claim at this point, because any claim he may have against RSA is not yet ripe.  *See* Response at 3 (acknowledging that "such a claim cannot be made unless uninsured motorist coverage is denied.").

a party to this action. *See id.* He then argues that RSA could seek to avoid liability in the potential future action by arguing that its rejection of UM/UIM coverage was not valid, even if this Court concludes that it was. *See id.*

## ARGUMENT

Neither Petitioner's threat to file a future lawsuit against RSA, nor his speculation that RSA will join his cause and argue in favor of coverage under Federated's policy, provide a basis to require RSA to be a party to the current action. Indeed, these arguments do nothing to cure the essential deficiency in Petitioner's pleading: the complete absence of allegations seeking relief from RSA. Because there are no such allegations, Petitioner has failed to state a claim against RSA under the New Mexico Declaratory Judgment Act, NMSA 1978, § 44-6-1 to -15, and RSA should be dismissed as a party to this action.

**I.   PETITIONER'S ENTIRE ARGUMENT IS BASED ON UNFOUNDED SPECULATION.**

Petitioner bases his entire argument on the premise that RSA will argue, either during the course of this proceeding, or in Petitioner's possible future action, that its own rejection of UM/UIM coverage is invalid. But this is an argument that RSA cannot and would not make.

First, RSA cannot and would not argue, during the course of these proceedings, that the rejection was invalid, because RSA has already taken the opposite stance: it has expressly denied Petitioner's allegation that the rejection as invalid. *See* RSA's Answer to Petition for Declaratory Judgment (Dkt. No. 11). RSA cannot now take a contrary position. *See Gallegos v. Pueblo of Tesuque*, 2002 NMSC 12, ¶ 23, 132 N.M. 207, 46 P.3d 668 ("Judicial estoppel prohibits a party from maintaining inconsistent positions in legal proceedings.").[2] Nor would

---

[2] RSA recognizes that the contents of a parties' Answer usually will not be considered in a motion to dismiss. An action for declaratory judgment, however, should be dismissed at any time if there is no longer a live controversy between the parties. *See Benitec Australia, Ltd. v. Nucleonics, Inv.*, 495 F.3d 1340 (Fed. Cir. 2007) ("The burden is

RSA take such a position, as it was RSA that decided to reject coverage for non-managerial employees.

Nor could RSA argue in a future proceeding that the rejection is invalid. Petitioner argues RSA could do so on his assumption that RSA will not be bound by the doctrine of collateral estoppel unless RSA is joined as a party to this action. Petitioner's assumption may well be wrong -- RSA may be bound by this Court's decision whether or not it is a party to the current action. *See, e.g., Ranger Ins. Co. v. Gen. Accident Fire & Life Assurance Co.*, 800 F.2d 329, 331 (3rd Cir. 1986) (insured was in privity with insurer and was therefore bound by position taken by insurer in prior proceeding). But this Court need not decide any issues regarding collateral estoppel, because, as noted above, the doctrine of judicial estoppel will prevent RSA from taking an inconsistent position.

There is also no reason to believe that RSA would argue that the rejection is invalid, if it could. As Petitioner explains his position, if this Court determines that he is not entitled to coverage under Federated's policy, he might then seek damages from RSA based on RSA's failure to procure insurance. *See* Response at 1-2. It would make no sense for RSA to argue, in that scenario, that Petitioner would be entitled to coverage if Petitioner's attempts to obtain coverage were unsuccessful. The only issue to be decided, at that point, is whether RSA promised to provide a specific level of coverage to its employees. Because the issues in the two actions will be entirely separate, Petitioner will not be subject to inconsistent judgments. Accordingly, there is no valid reason that RSA should be included as a party to this action.

---

on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed *and that it has continued since*.") (emphasis added).

**II.   PETITIONER'S SPECULATION ABOUT THE FUTURE DOES NOT PROVIDE A BASIS TO FORCE RSA TO TAKE PART IN THE CURRENT ACTION.**

Even if Petitioner's speculation were not entirely unfounded, it would still provide no basis to require RSA to be a party to the current action.

**A.   Petitioner's Threat To Bring a Future Claim Against RSA Does Not Provide A Basis To Force RSA To Take Part In The Current Action.**

First, Petitioner's assertion that he may bring a lawsuit against RSA in the future does not provide a basis for seeking a declaratory judgment against RSA.

   1.   <u>Petitioner's possible future claim against RSA does not create a current controversy with RSA</u>.

As explained in RSA's Motion, a petition for declaratory judgment must set forth an "actual controversy." *See Yount v. Millington*, 117 N.M. 95, 103, 869 P.2d 283, 291 (Ct. App. 1993) ("Under both the federal and state declaratory judgment acts, in order to sustain a declaratory judgment action, it is necessary to establish that an actual controversy between the parties exists."). An actual controversy is "a controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See id.*, 117 N.M. at 103, 869 P.2d at 291 (relying on federal law for guidance in interpreting New Mexico's statute and quoting *Norvell v. Sangre de Cristo Dev. Co.*, 519 F.2d 370, 378 (10th Cir. 1975)). The controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character." *Kunkel*, 866 F.2d at 1273-74 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

Facts establishing an actual controversy must be set forth in the initial pleading, which must "possess enough heft to show that the pleader is entitled to relief." *See Equity Lifestyle Properties, Inc. v. City of Albuquerque*, 2008 U.S. Dist. LEXIS 15858 at *15 (D.N.M. January

31, 2008) (applying the revised pleading standard set out in *Bell v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) to action for declaratory judgment); *Turner v. Oklahoma*, 2008 U.S. Dist. LEXIS 66429 at *6-*7 (W.D. Okla. August 29, 2008) (same).  Moreover, because the actual controversy requirement is jurisdictional, a case should be dismissed for lack of jurisdiction unless the allegations in the petition set forth facts establishing an actual controversy between the parties.  *See State ex rel. Overton v. New Mexico State Tax Comm'n*, 81 N.M. 28, 31, 462 P.2d 613, 616 (1969) ("There must be an 'actual controversy' before jurisdiction is obtained under [New Mexico's Declaratory Judgment Act]."); *cf. Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989) (equating the actual controversy requirement of the federal Declaratory Judgment Act with the Constitutional case or controversy requirement).

There is no actual controversy when a declaration will neither impose duties on, nor grant rights to, the named defendant.  *See Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("Redress is sought *through* the Court, but *from* the Defendant.") (emphasis in original); *Johnson v. Lally*, 118 N.M. 795, 801, 887 P.2d 1262, 1268 (Ct. App. 1994) (a declaratory judgment must "serve a constructive purpose in guiding the future conduct of the parties.").  Further, a petitioner cannot rely on allegations against one respondent as a basis to establish the court's jurisdiction over another.  *See Gem County Mosquito Abatement District v. EPA*, 398 F.Supp.2d 1, 7-8 (D.D.C. 2005) (petitioners could not rely on arguments about one group of defendants to establish an actual controversy with other defendants with different interests).

In a declaratory judgment action, there is no live controversy between a plaintiff and a defendant unless the remedy sought would affect that *that* defendant.  *See Negley v. Breads of the World Medical Plan*, 2007 U.S. App. LEXIS 5099 at *11-*12 (10th Cir. March 2, 2007) (dismissing declaratory judgment action that called for another party, rather than the defendant,

6

to take action). For that reason, the Fifth Circuit Court of Appeals affirmed a district court's decision dismissing the purchaser of electronic goods as a defendant to a declaratory judgment action to determine whether the purchaser's bank was required to honor a demand for payment from the seller. *See Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319 (5th Cir. 2001). Similarly, a district court in Ohio dismissed buyers who had rejected a shipment of goods from a declaratory judgment action to determine whether the shipper would be required to pay the seller for the value of the shipment. *See Preferred Shippers, Inc. v. Triple T Transport, Inc.*, 2008 U.S. Dist. LEXIS 47828 at *11-*14 (S.D. Ohio June 20, 2008).

One way to test whether there is an actual controversy is to flip the parties. *See Collin County, Texas v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) (applying this method to determine whether municipality could seek a declaration regarding possible lawsuits the defendant had threatened to bring against other parties). In other words, the Court should ask whether RSA could have filed this declaratory judgment action, asking the Court to determine whether Petitioner's claim is covered under the Federated policy. There would be no reason for RSA to do so, because RSA is not threatened with the prospect of making any payments to Petitioner if such coverage exists (which it does not). Accordingly, there is no controversy between Petitioner and RSA as to coverage under the Federated policy.

Petitioner, however, argues that there is an actual controversy between RSA and Petitioner regarding the coverage provided under the Federated policy. That is not the case. Contrary to Petitioner's argument, the prospect that one of the parties to a declaratory judgment action could seek reimbursement from another party, based on the outcome of a declaratory judgment action, does not establish a basis to join the other party to the initial action. Indeed, in both of the cases cited above the courts dismissed the parties who would not be directly affected

7

by the declaratory judgment, even though those parties might have faced future claims for reimbursement from the parties who would be affected by the declaration. *See Heritage Bank*, 250 F.3d at 324; *Preferred Shippers, Inc.*, 2008 U.S. Dist. LEXIS 47828 at *11-*14.[3] Moreover, a party should not be joined to a declaratory judgment action based on the mere potential of a future claim that may never be filed. In fact, it is well established that a plaintiff cannot ask a Court to enter a declaration based on speculation about future events that may or may not occur. *See Yount*, 117 N.M. at 103, 869 P.2d at 291 ("The mere possibility or even probability that a person may be adversely affected in the future … fails to satisfy the actual controversy requirement.") (citation and quotation marks omitted); *Kunkel*, 866 F.2d at 1274 ("Issues which will likely never come to pass should remain undecided."); *Continental Illinois Nat'l Bank & Trust Co. v. Bailey*, 433 N.E.2d 1098, 1103-04 (Ill. 1993) ("A court will not declare the rights of parties on a state of facts which has not arisen and which may never arise or on a matter which is future, contingent, and uncertain."). And there is little purpose in issuing a declaration regarding events will likely never come to pass. *See Benitec Australia v. Nucleonics, Inc.*, 495 F.3d 1340, 1347-48 (Fed. Cir. 2007) (plaintiff could not seek a declaratory judgment to determine patent rights when defendant agreed in writing that it would not file a suit for patent infringement); *Int'l Automated Systems*, 595 F.Supp.2d at 1209 (same).[4]

---

[3] There are at least two additional reasons why Petitioner's threat to bring a future lawsuit does not create a current controversy with RSA. First, a declaratory judgment action is not the proper forum to consider issues that could arise in a claim for damages. *See Preferred Shippers, Inc.*, 2008 U.S. Dist. LEXIS 47828 at *14 (issues related to plaintiff's potential future claim for damages should not be decided in declaratory judgment action); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 100 (D.D.C. 1999) (declaratory judgment was not proper vehicle to determine whether defendants had tortuously interfered with plaintiff's contract);[3] *cf. Johnson*, 118 N.M. at 799, 887 P.2d at 1266 ("Under the great weight of case law, it is clear that past wrongs … do not create a foundation for declaratory relief without either continuing illegal action or continuing consequences to Plaintiff."). In addition, a party cannot use the declaratory judgment vehicle as a means to obtain a preview ruling on an opposing party's affirmative defense. *See Calderon v. Ashmus*, 523 U.S. 740 (1998) (death row prisoner could not seek declaratory judgment to determine whether state had a viable affirmative defense to a future habeas corpus proceeding).

[4] Although Petitioner has brought this claim under the New Mexico Declaratory Judgment Act, New Mexico has looked to federal law for guidance when interpreting the New Mexico Declaratory Judgment Act, which is nearly

8

Here, it would be premature to decide whether RSA could validly argue, as an affirmative defense in a future action for damages, that its own rejection of UM/UIM coverage was invalid, because Petitioner has not brought a claim for damages filed against RSA, and he may never bring any such claim. Moreover, as discussed above, there is no real possibility that that RSA either would or could argue, in this possible future action, that the rejection was invalid. Thus, the threat of Petitioner's possible future lawsuit does not create an actual controversy between RSA and Petitioner.

        2.    <u>RSA does not have an interest in, and is not a necessary party to, the controversy between Petitioner and Federated</u>.

Having failed to establish that his threat to bring a future lawsuit creates an actual controversy between himself and RSA, Petitioner argues that RSA has a "stake" in the outcome of his controversy with Federated because RSA could be exposed to liability for failing to procure insurance coverage if Federated prevails in this action. *See* Response at 1-2. Petitioner appears to be invoking that portion of the New Mexico Declaratory Judgment Act which provides that any party should be joined in a declaratory judgment action if that party has "an interest" in the action. *See* NMSA 1978 § 44-6-12 (1975) ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration"). Petitioner's threat that it will file a future lawsuit against RSA for failing to obtain insurance coverage does not establish that RSA has an interest in the outcome of the current dispute over the scope of coverage that RSA did obtain.

New Mexico has already determined that a party who has potential liability for failure to procure insurance coverage does not have an interest in an action to determine the scope of

---

identical to the comparable federal statute. *See Yount*, 117 N.M. at 103, 869 P.2d at 291. Accordingly, this Court should follow the decisions of its fellow federal courts and reject Petitioner's attempt to name RSA as a party to this action when the declaration he seeks will not be directed toward RSA.

coverage, and thus is not a party that must be joined under § 44-6-12.  This question arose in *Grain Dealers Mutual Insurance Company v. Firth*, 105 N.M. 586, 734 P.2d 1269 (1987).  In that case, the insurer, Grain Dealers, sought a declaratory judgment from the Court, asserting that it had no obligation to provide coverage or a defense to its insured because the insured's policy had been cancelled for failure to pay premiums.  *See id.* at 586, 734 P.2d at 1269.  The insured sought to join the agents who sold her the policy, alleging that the agents were negligent in failing to procure insurance coverage for her.  *See id.*  After determining that the agents were not properly joined as third-party defendants under NMRA Rule 1-014(A), the Court then held that the agents were not subject to joinder under § 44-6-12.  *See id.* at 588, 734 P.2d at 1271.  The Court explained that the agents had not claimed any interest in the coverage dispute between Grain Dealers and the insured.  *See id.*  Nor could the Court identify any interest that the agents might have in the determination as to whether Grain Dealers had grounds to cancel the policy.  *See id.*  Instead, the Court recognized that the potential claim against the agents was related to, but separate from, the coverage dispute, and thus there was no reason to join the agent to the action to determine coverage.

The same is true here.  While the potential, future claim against RSA might be related to the current action, the questions are entirely separate.  In this action, the Court will be asked to determine whether RSA validly rejected UM/UIM coverage for its non-managerial employees.  In the action against RSA -- if it is ever brought -- the court overseeing that case will be asked to determine what representations RSA made to its employees regarding the extent of its coverage.  The threat of a future claim based on RSA's failure to obtain the amount of insurance coverage Petitioner wanted does not give RSA an interest in the outcome of this action, and therefore RSA need not be joined under § 44-6-12.

For the same reasons, there is no merit to Petitioner's argument that his possible future lawsuit makes RSA a necessary party to this action, even though several courts have concluded that an insured who has not made a claim for coverage is not a necessary party to a coverage dispute between the insurer and a third-party claimant.  *See* Motion to Dismiss at 4-5 and cases cited therein.  As numerous courts have recognized, there is no need for an insured to be joined in such a dispute when the insured is not seeking coverage, and thus will be unaffected by a determination as to whether the additional claimant is entitled to coverage.[5]  *See id.*

### B. Petitioner's Unfounded Belief That RSA Will Support His Position Does Not Establish An Actual Controversy Between Petitioner And RSA.

Just as Petitioner's threat to bring a future lawsuit does not make RSA a necessary or proper party to this action, Petitioner's speculation that RSA will support his effort to obtain insurance coverage does not provide a basis to make RSA a party to this action.  First, as explained above, Petitioner's speculation is entirely unfounded, because RSA has taken the opposite position by expressly denying Petitioner's allegation that RSA's rejection of UM/UIM coverage was invalid.  Further, by filing this Motion, RSA has expressly disavowed any interest in being joined as a party to the coverage dispute.  Thus, Plaintiff's speculation that RSA would have such an interest is irrelevant and should have no bearing on the outcome of this Motion. *See San Juan Water Comm'n*, 116 N.M. at 109, 860 P.2d at 751 (plaintiff could not rely on his own assertion that other taxpayers would claim an interest holding that only those taxpayers that

---

[5] Petitioner argues that the insureds in each of those actions were not necessary parties to the coverage dispute because not involved in the underlying events giving rise to the claim for coverage.  *See* Response at 3-4.  That is not the case.  In fact each of the named insureds were involved in the underlying events.  Most notably, in *Northwest Cas. Co. v. Kirkman* -- a case frequently cited by other courts for the proposition that a named insured is not a necessary party in a coverage dispute with an additional insured -- the issue to be decided was whether the named insured had granted the additional insured permission to use the insured vehicle.  *See Northwest Cas. Co. v. Kirkman* 119 F.Supp. 828, 829 (M.D.N.C. 1954).  Even though the outcome would be determined based on the named insured's action, the Court concluded that the named insured was not a necessary party because the named insured would not be affected by the coverage determination.  *See id.*  The same reasoning applies here.

brought declaratory judgment action should be joined under § 44-6-12, because no other taxpayers had claimed an interest relating to the subject of the action); *Grain Dealers v. Firth*, 105 N.M. at 588, 734 P.2d at 1271 (third parties could not be joined under § 44-6-12 because they claimed no interest in the subject matter of the declaratory judgment action).[6]

In addition, the hypothetical prospect that RSA would *agree* with Petitioner does not provide a basis to force RSA to defend against Petitioner's claims. To the contrary, there can be no actual controversy unless the parties have opposing or adverse interests. *See Overton*, 81 N.M. at 33, 462 P.2d at 618 (petitioner seeking declaratory judgment must establish "concrete adverseness" between the parties) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)); *Yount*, 117 N.M. at 103, 869 P.2d at 291 ("[T]he test for what constitutes an actual controversy is 'whether there is a controversy between the parties having adverse legal interests …'") (quoting *Norvell*, 519 F.2d at 378); c*f. Kunkel*, 866 F.2d at 1274 (there is no actual controversy unless the parties are "embattled in a hostile assertion of rights"). Accordingly, a declaratory judgment action cannot be brought against a party that shares the petitioner's view. *See Gem County*, 398 F.Supp.2d at 7 (dismissing action for declaratory judgment where plaintiff and defendant both took the same position on an issue). Thus, if RSA were hypothetically inclined to argue in favor of Petitioner -- which it is not -- then there would be no actual controversy between RSA and Petitioner, and Petitioner would have no claim against RSA.

## CONCLUSION

For the foregoing reasons, Respondents' respectfully request that the Court grant Respondent RSA Enterprises, LLC's Motion to Dismiss.

---

[6] Similarly, there is no actual controversy between parties when one of those parties has disavowed an interest in the outcome. *See BGA, LLC v. Ulster County*, 2007 U.S. Dist. LEXIS 62315 at *7 (N.D.N.Y. August 23, 2007) ("[T]he County's refusal to take a position on the factual and legal conclusions set out in the tribe's motion removes any substantial controversy for the court to decide.").

        Respectfully submitted,

        PEIFER, HANSON & MULLINS, P.A.


        By: /s/  Lauren Keefe
            Robert E. Hanson
            Lauren Keefe
        Post Office Box 25245
        20 First Plaza, Suite 725
        Albuquerque, New Mexico 87125-5245
        Telephone: (505) 247-4800

*Attorneys for Federated Service Insurance Company and RSA Enterprises, LLC d/b/a R&S Honda Polaris*


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 8th day of May, 2009, I filed the foregoing Reply in Support of Motion to Dismiss electronically through the CM/ECF system.


        By: /s/  Lauren Keefe
            Lauren Keefe